Yuri Mikulka (SBN 185926)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:  213-576-1000
Facsimile:  213-576-1100
yuri.mikulka@alston.com

*Counsel for Plaintiff*
*Warmboard, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| WARMBOARD, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> WARM BROTHERS, INC., a Washington Corporation, and A. HOYT CORBETT, JR., <br><br> Defendants. | Case No. 5:23-cv-01378 <br><br> JURY TRIAL DEMANDED <br><br> **COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF FOR:** <br><br> **(1) FALSE ADVERTISING (LANHAM ACT);** <br> **(2) FALSE ADVERTISING (CAL. BUS. & PROF. CODE);** <br> **(3) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE);** <br> **(4) TRADE LIBEL;** <br> **(5) COMMERCIAL DEFAMATION; AND** <br> **(6) UNJUST ENRICHMENT** |

Plaintiff Warmboard Inc. ("Warmboard") brings this action against Defendants Warm Brothers, Inc. d/b/a Ecowarm ("Warm Brothers") and A. Hoyt Corbett, Jr. ("Corbett") (Warm Brothers and Corbett, collectively, "Defendants") and alleges as follows:

**INTRODUCTION**

1.    This is an action against Defendants for their: (i) knowing and willful false or misleading advertising regarding Warmboard's radiant heating products; and (ii) knowing and willful false or misleading advertising comparing Warmboard's products to Defendant Warm Brothers' Ecowarm and Thermalboard products.

2.    Warmboard is a leader in the radiant heating industry and has developed a strong reputation and following for its innovative indoor heating products and solutions.

3.    Defendant Warm Brothers directly competes with Warmboard.  Yet, rather than employing lawful means to compete with a direct competitor and promote their competing Ecowarm and Thermalboard products, Defendants chose to deceive consumers by employing false or misleading claims on its websites and elsewhere regarding the nature, characteristics, and qualities of Warmboard's products.

4.    At all times relevant to this Complaint, Defendants have made false or misleading statements to consumers about Warmboard and the quality of Warmboard's products, including, but not limited to, false and misleading representations on its websites and marketing materials about the materials used in Warmboard's products, the performance of Warmboard's products, and the ease of installation of Warmboard's products, as well as misleading and false comparisons with Defendants' Ecowarm products and Thermalboard products.

5.    Defendants' actions constitute: (1) false or misleading advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) false or misleading advertising in violation of Cal. Bus. & Prof. Code § 17500, et seq.; (3) unfair competition in violation of Cal. Bus. & Prof. Code § 17200; (4) trade libel; (5) commercial defamation; and (6) unjust enrichment.

6.    Warmboard is entitled to injunctive relief, damages (including, but not limited to, lost profits and harm to goodwill), treble damages, restitution, disgorgement of Defendants' ill-gotten profits, attorneys' fees, costs, and other relief under federal and California law for Defendants' false

advertising, unfair competition, deceptive business practices, and wrongful conduct.

## JURISDICTION

7.     This Court has subject matter jurisdiction over Warmboard's federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121(a) because this action arises under the Federal Lanham Act, 15 U.S.C. §§ 1051, et seq.

8.     This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

9.     In addition, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000.

10.     Defendants are subject to personal jurisdiction in this Court because Defendants transact business within the State of California, contract to supply goods or services in the State of California, including, but not limited to, their Ecowarm and Thermalboard products, and have engaged in tortious acts outside of California that have caused injury within the State of California.

11.     More specifically, Defendant Warm Brothers, at the direction of and with the active, direct participation of Defendant Corbett, markets, promotes, advertises and offers for sale, on its websites, its products to customers throughout the United States including in the State of California all while making unlawful representations about Warmboard's products to those consumers, including those in the State of California, which harms Warmboard, a corporation located in the State of California.  By engaging in this conduct, Defendants have purposefully availed themselves of the benefits of doing business in the State of California and have and continue to commit tortious actions in the State and that cause harm within the State. Warmboard has suffered substantial injury in California because of Defendants' actions.

## VENUE

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because as described above and herein, a substantial part of the events giving rise to Warmboard's claims occurred here, and a substantial part of the property that is the subject of this action is located here, and the Court has personal jurisdiction over Defendants as alleged throughout this Complaint.

**THE PARTIES**

13.    Plaintiff Warmboard is a California corporation, with its principal place of business at 100 Enterprise Way, Scotts Valley, California. Warmboard is a leading radiant heating panel manufacturer that has developed and provides innovative indoor heating products and solutions to consumers, contractors, and the radiant heating and residential construction industries.

14.    Defendant Warm Brothers, Inc., d/b/a Ecowarm / Radiantboard / Thermalboard is a Washington corporation, with its principal place of business at 10705 NE Manitou Park Boulevard, Bainbridge Island, Washington.

15.    Defendant A. Hoyt Corbett, Jr., is an individual and, on information and belief, a citizen of the State of Washington residing at 10705 Northeast Manitou Park Boulevard, Bainbridge Island, Washington.  At all relevant times to the Complaint, Defendant Corbett has been an owner of Defendant Warm Brothers and identified on the Washington Secretary of State's website as a governor of Defendant Warm Brothers. On information and belief, Defendant Corbett authorized and/or directed the wrongful conduct alleged herein, as well as actively and directly participated in the acts complained of in the Complaint.  He, therefore, is liable in his individual capacity for the claims asserted in this Complaint.

**FACTS COMMON TO ALL CLAIMS**

**A.    WARMBOARD AND ITS PRODUCTS**

16.    Radiant heating is a category of HVAC technology that exchanges heat by convection, conduction, and radiation. Some radiant heating products contain aluminum-clad panels with a system of attached tubes that allow warm water to heat the panels, thereby warming floors, walls, or any other surface utilizing radiant heat panels.

17.    Warmboard was founded in 1992 by Terry Alsberg. Mr. Alsberg used his background in architecture and engineering physics to invest in and develop a radiant heating array out of his garage in Capitola, California. Mr. Alsberg applied for a patent to his technology in 1994 with a patent issued in 1998.  He licensed his technology to Jeld-Wen Inc., an Oregon corporation, in 1996. Jeld-Wen first installed Warmboard panels in test homes in 1996 and first sold panels to the public in 1998.  Jeld-Wen later spun out its Warmboard division as Warmboard, Inc., a California

corporation that was incorporated in 2002 and has since become one of the leading radiant heating systems on the market.

18.    As of the filing of this Complaint, Warmboard offers two types of radiant heating system panels: Warmboard-S and Warmboard-R.

19.    Warmboard-S is a structural subfloor and radiant panel in one. It is most commonly used in new construction and is regularly installed directly over the joist or slab.

20.    Warmboard-R is a smaller, thinner panel that, unlike new construction projects, is better suited for remodels and retrofits that do not need structural subflooring installed. Warmboard-R typically installs over an existing subfloor or slab but is also used in walls or ceilings when the original floors should remain intact.

21.    Warmboard's radiant board products are widely regarded as the gold standard in the radiant panel industry for providing cutting edge radiant heating solutions and providing high-quality, effective heating products for homes.

22.    Since Warmboard's inception in 1992 and its incorporation in 2002, it has developed significant goodwill among consumers—homeowners, contractors, and professionals in the radiant heating panel industry alike—in the radiant-heating marketplace. Warmboard's reputation is the accumulation of it steadily earning the trust of consumers, contractors, and the radiant-heating industry through its consistency, integrity, and commitment to quality.

23.    Over the years, Warmboard has invested heavily in researching and developing its innovative radiant heating products, and Warmboard devotes significant financial resources each year—in the form of marketing, advertising, and other initiatives—to build its brand as a provider of high-quality, safe, and effective radiant heating products.  Warmboard's founder, Mr. Alsberg, has been awarded multiple patents on behalf of Warmboard for his work in this space.

24.    By virtue of Warmboard's commitment to the development and testing of its products, Warmboard has become acclaimed for its high-quality radiant heating products. Warmboard's products are some of the most well-known and respected in the industry.

///

///

**B.    DEFENDANTS' UNLAWFUL ACTIONS**

   **a.  Defendants' Business**

25.    Warmboard and Defendant Warm Brothers are direct competitors in the radiant panel industry and provide comparable product offerings to consumers.

26.    As described herein, instead of lawfully and fairly competing in the marketplace, Defendants instead have resorted to unfair competition, unfair business practices, and false and misleading claims to compete with Warmboard.

   **b.  False and Misleading Claims on Defendants' Websites**

27.    As described herein, Defendants' marketing, as previously illustrated on its website, contained unlawfully false, misleading, and deceptive claims about Warmboard.

28.    For instance, at all times relevant to the Complaint and until recently, Defendants' Ecowarm-branded website made false, misleading, and deceptive claims about the qualities and characteristics of Warmboard's Warmboard-R product and draw deceptive comparisons between Defendants' Ecowarm product and the Warmboard-R product. (https://ecowarmradiantheat.com/ecowarm-compared-to-warmboard-2/) ("Warmboard-R Comparison Page"). A true and correct copy of the Warmboard-R Comparison Page is attached hereto as **Exhibit 1**.

29.    At all times relevant to the Complaint and until recently, Defendants' Ecowarm-branded website also made false, misleading, and deceptive claims about the qualities and characteristics of Warmboard's Warmboard-S product and draws deceptive comparisons between the Defendants' Ecowarm product and the Warmboard-S product. (https://ecowarmradiantheat.com/pros-and-cons-ecowarm-compared-to-warmboard-s-integrated-subfloor/) ("Warmboard-S Comparison Page"). A true and correct copy of the Warmboard-S Comparison Page is attached hereto as **Exhibit 2**.

30.    Until recently Defendants' Thermalboard-branded website also made false, misleading, and deceptive claims about the qualities and characteristics of Warmboard products and draws deceptive comparisons between the Defendants' Thermalboard product and the Warmboard products.           (https://thermalboardradiantfloorheating.com/thermalboard-vs-warmboard-r/)

("Thermalboard Comparison Page"). A true and correct copy of the Thermalboard Comparison Page is attached hereto as **Exhibit 3**.

### c. Defendant's False or Misleading Installation Claims

31.     On the Warmboard-R Comparison Page and Thermalboard Comparison Page of Defendants' websites, Defendants made several false or misleading claims about the installation of Warmboard-R products, particularly when compared to their Ecowarm and Thermalboard products (the "Installation Claims").

32.     Several of the statements made on the Warmboard-R Comparison Page falsely represent that Warmboard-R contains "heavier" and "thicker" aluminum that is "harder to cut[,]" slower and more difficult to install, and "more difficult on the blades and contractor" than their Ecowarm product.  These statements are false or misleading.

33.     Comparing directly to Warmboard-R, Defendants stated that the Ecowarm Product is " Lighter. Easy to cut and nail board makes installation over subfloor fast – saving time and money," but that Warmboard is " Heavier with thicker aluminum. Harder to cut and screw metal."

34.     Similarly, Defendants falsely represented on the Warmboard-R Comparison Page that Warmboard-R is heavier, is harder to cut and screw, has a faulty design that is more difficult to retain the tubing in the board, requires nail plates, and requires extra time and labor to install than Defendant's Ecowarm product:

> "Our panels are lighter and significantly easier to cut and screw. The slight undercut
> groove tightly retains the pipe in the channel. Warmboard-R has a straight sided
> groove which makes it harder to retain the tubing in the board. The Warmboard



- 7 -

Installation Manual says about this: 'Use nail plates to secure tubing as needed and remove before finish floors are installed'. This requires extra time and labor."

35.    Defendant also falsely represented on its website:

"The thicker aluminum used by Warmboard makes cutting much more difficult on the blades and the contractor. Ecowarm RadiantBoard panels are lighter, making them easier to cut and place. As the curved combo sections of Ecowarm are serrated, a mallet or heavy roller can be used to pound the tubing in place."

36.    These statements are false because: (a) Defendants' Ecowarm product and the Warmboard-R product are similar in size and weight and require similar labor to install; and (b) the design of the Warmboard-R and Warmboard-S panels employs a patented variable width channel that eliminates the need for nail plates.

37.    Defendants also falsely represented that Warmboard products require grinding and pre-drilling prior to installation, while Defendants' products do not. (*See* Ex. 1).

38.    This statement is false or misleading because: (a) no grinding or pre-drilling is required to install Warmboard products Defendant's Ecowarm product; and (b) the aluminum used in Warmboard products may be cut easily by carbide saw blades typically used in the construction industry.

39.    To support the Installation Claims, Defendants also provided an endorsement on its webpage from Vaughn Peiffer in which Mr. Peiffer purportedly states that he has "installed many Ecowarm RadiantBoard projects and one Warmboard R project over the years. I have found Ecowarm RadiantBoard easier to install than Warmboard R boards; much less breakage, easier and safer to handle, and easier on saw blades."



I have installed many Ecowarm RadiantBoard projects and one Warmboard R project over the years. I have found Ecowarm RadiantBoard easier to install than Warmboard R boards; much less breakage, easier and safer to handle, and easier on saw blades. — **Vaughn Peiffer, California**

40.     Publishing a purported endorsement of Mr. Peiffer, who is informed and believed to be deceased, is misleading in that it misleads reasonable consumers to expect that Mr. Peiffer's experience can be substantiated and is representative of what they can generally expect when comparing Defendants' Ecowarm product against Warmboard's.

41.     Defendants make these claims for the purpose of making false or misleading comparisons between Warmboard's products and Defendants' Ecowarm products.

42.     The qualities and characteristics of a radiant heating product, including, but not limited to, the relative ease of installation in comparison to Defendants' products, are factors likely to influence a consumer's decision to purchase these products because they relate to inherent qualities and characteristics of a radiant heating product.

43.     The Installation Claims Defendants made on the Warmboard-R Comparison Page and the Thermalboard Comparison Page are therefore material to consumers' purchasing decisions.

**d.  Defendants' False or Misleading Materials Claims**

44.     On the Warmboard-R Comparison Page and the Warmboard-S Comparison Page, Defendants made false or misleading claims about the materials used in Warmboard's products (the "Materials Claims").

45.     Many of Defendants' false or misleading claims were made on the Warmboard-R Comparison Page and concern the oriented strand board ("OSB") used in Warmboard's Warmboard-R product, including:

   a.  Defendants claimed on the Warmboard-R Comparison Page that their Ecowarm product uses " 6 or 7 Ply High Quality USA Plywood," but that Warmboard-R is " Made with OSB.  Many Contractors prefer plywood for its strength and moisture resistance."

   b.  Defendants claimed that "Ecowarm® RadiantBoard™ is significantly less costly than Warmboard-R and uses 6 or 7 layer plywood. This is the preferred substrate by many contactors for it's (sic) stability and moisture resistance over Warmboard-R's OSB" (collectively, the "OSB Claims").

46.     These claims are unsubstantiated and falsely represent or mislead consumers to

believe that OSB is inferior to plywood for nonstructural radiant panel products.  To the contrary, OSB often is a superior option for nonstructural radiant heating panels because the random orientation of strands in OSB make the panel stronger and harder to break at a channel than plywood. In contrast, plywood is not necessary, or even advisable, for a nonstructural panel.

47.    Defendants also falsely represented on the Warmboard-R Comparison Page that the aluminum used in Warmboard products is not "Made in USA with Recycled Content," and is instead from an "Unspecified Source" ("Aluminum Source Claims").

| Aluminum | ✅ Made In USA With Recycled Content | ❌ Unspecified Source |
|---|---|---|

48.    These statements are false or misleading on their face because Warmboard sources its aluminum alloy domestically within the United States and uses aluminum that contains 24% recycled content.

49.    Defendants also falsely represented on its Warmboard-R Comparison Page that Warmboard-R product does not use thermodynamically appropriate materials while the Ecowarm product does, specifically that:

    a.    Defendants' Ecowarm product has a " ✅ Thermodynamically appropriate thickness suited to heat loss of modern houses," but that the Warmboard-R product uses " ❌ Thicker aluminum adds significant costs";

    b.    Defendants' "Ecowarm® RadiantBoard™ has a thermodynamically appropriate thickness of aluminum" that is "appropriate for the heat loss of modern homes, without adding unnecessary costs associated with thicker than thermodynamically necessary aluminum"; and

    c.    The Warmboard-R product is *not* thermodynamically appropriate because it uses a "thicker and more costly plate. Hyper responsive thick and expensive plates are no longer as relevant as in the past." (collectively, the "Aluminum Design Claims").

50.    These statements are false or misleading because the specific aluminum thickness and alloy—a .025-inch thick 1070 aluminum alloy—are utilized on the Warmboard-R and Warmboard-S products for its optimum thermodynamic properties, conductivity, and malleability.  Therefore,

Defendants' representations that Warmboard's use of this aluminum is thermodynamically *in*appropriate is false or misleading.

51.    Whether a radiant heating product is appropriately designed and composed of quality and performance-appropriate materials is an important factor that is likely to influence a consumer's decision to purchase these products because they are related to an inherent qualities or characteristics of a radiant heating product.

52.    The Materials Claims are therefore material to consumers' purchasing decisions.

### e.    Defendants' False or Misleading Imitation Claims

53.    At all relevant times until around December 2022, Defendants claimed on its Warmboard-R Comparison Page that Warmboard-R is an "imitat[ion] of and "directly mimics" Ecowarm's product design (the "Imitation Claims").

54.    These claims are false or misleading because the technology utilized in Warmboard-R's products predate Ecowarm.

55.    The Warmboard-R product is based on Warmboard's patent that was issued in 1998. Additionally, Warmboard-R shares the same groove geometry, aluminum thickness, tubing spacing, and tubing diameter as Warmboard-S, which was introduced in 1996.

56.    Defendants' Thermalboard and Ecowarm products were introduced in or about 2000 and 2008, respectively.

57.    Given that Defendants' products post-date Warmboard's design invention, Warmboard's products cannot "imitate[e]" or "directly mimic[]" the design of a product that they predate. Defendants' Imitation Claims, therefore, are false on their face.

58.    The Imitation Claims are misleading because they cause reasonable consumers to falsely believe that Warmboard's products are inferior, lower quality imitations of Defendants' products, and/or that Warmboard unlawfully imitated Defendants' product design.

59.    Whether a radiant heating product is an imitation or mimics another product relates to an inherent quality or characteristic of Warmboard's products and is an important factor that is likely to influence a consumer's decision to purchase these products because they relate to inherent qualities and characteristics of a radiant heating product.

60.    Whether a radiant heating product manufacturer imitates or mimics the products and designs of another manufacturer an important factor that is likely to influence a consumer's decision to purchase these products because they relate to inherent qualities and characteristics of a radiant heating product and the reputation and goodwill of its manufacturer.

61.    The Imitation Claims are therefore material to consumers' purchasing decisions.

### f.  Defendants' False or Misleading Structural Claims

62.    Defendants falsely represented on their Warmboard-R Comparison Page that Warmboard-R "uses thicker aluminum due to [a] structural strength issue with their original structural product, [Warmboard-S]" and that the "aluminum thickness of structural [Warmboard-S] was arrived as to meet the structural engineering demands" ("Structural Claims").

63.    These claims are false. There is no structural strength issue with the Warmboard-S product. Warmboard-S Products are tested for their structural strength, and they have been approved under International Building Code requirements for structural subflooring without the aluminum overlay.  In fact, the aluminum thickness of Warmboard-S is utilized solely for its thermodynamic properties, conductivity, and malleability, rather than for structural strength. Therefore, the Structural Claims are false on their face.

64.    Whether a radiant heating product has a structural strength issue is an important factor that is likely to influence a consumer's decision to purchase these products because they relate to inherent qualities and characteristics of a radiant heating product.

65.    Defendants' Structural Claims are therefore false and misleading and are material to consumers' purchasing decisions.

### g.  Defendants' False or Misleading Warmboard-S Comparisons



**Pros & Cons: Ecowarm Compared to Warmboard S**

Warmboard-S is a structural radiant heating product that combines radiant heating panels with a subfloor. Ecowarm panels are affixed above the subfloor, and we believe there are significant advantages to this process – including installation speed, potential revisions, cost and more. Read on to learn more.

1

2       66.    On the Warmboard-S Comparison Page, Defendants made a range of false or

3  misleading statements that purportedly compare Defendants' Ecowarm product with Warmboard's

4  Warmboard-S product (the "Warmboard-S Comparison Claims"). Warmboard-S products, however,

5  are not comparable based on the disparate construction, specifications, and intended use of those

6  products.

7       67.    The Warmboard-S product is a hydronic radiant panel manufactured from a 7-layer

8  plywood with a conductive aluminum top skin that is bonded to the entire top surface.   All

9  Warmboard-S products are approved as a structural subfloor and can be installed directly over a

10  structural floor joist.   The Warmboard-S products is best suited for new home builds or home

11  additions that require a weight-bearing, structural subfloor that can bear the load of living space

12  elements and the floor covering.  Warmboard-S is tested for compliance with International Building

13  Code structural requirements for subfloors.

14      68.    In contrast, the Warmboard-R product and Defendant's Ecowarm product are

15  nonstructural overlay panels.  Generally, they are designed to be installed over an existing subfloor

16  and are thinner than the Warmboard-S product.  They are not designed or approved to serve as the

17  subfloor itself.

18      69.    Comparing a ***structural*** radiant heating product (like the Warmboard-S product) with

19  a ***nonstructural*** heating panel (like Defendants' Ecowarm product), without explaining the

20  differences in the use, design, or purpose of those products, misleads reasonable consumers to falsely

21  believe that the two products serve the same purpose and therefore are subject to a fair comparison.

22      70.    Defendants make the following false or misleading statements to compare Ecowarm

23  with Warmboard-S, without explaining the different purpose and use of these products which is

24  necessary to avoid misleading the consumers:

25          a.  "Radiant heat contractors tell us Warmboard S can be slow to install.

26              The time consuming process involves maneuvering the large, heavy

27              boards into place before finally installing the panels with both adhesive

28              and 2 & ¾" stainless screws. . . . In contrast, Ecowarm is simply glued

and stapled rapidly over the subfloor. Our panels are lightweight and easy to handle . . . ."

    b.   "Warmboard S is installed over joists as the subfloor early in a project and the tubing is usually installed (because PEX loops will often run under walls). . . . Our product is typically installed after the structure is weather protected. This means installing an extra protective layer isn't necessary, as the product is not exposed to the elements."

    c.   "Since Warmboard S is both the subfloor and the channels for PEX pipe when revisions are made to room layout (as so often happens in construction) removing panels and or routing new channels can be very time consuming work."

    d.   "Ecowarm® RadiantBoard™ is lighter, significantly easier to cut and screw, and has a slight undercut that tightly retains the tubing in the grooves. "

    e.   "For Warmboard S, a separate protective material layer is often needed . . . resulting in much higher installation costs and a difficult project flow. Ecowarm is most often installed at the end of the project, right before flooring goods, thus avoiding these costly accommodations."

71.    These statements mislead reasonable consumers to falsely believe that Warmboard-S and Ecowarm are comparable when Warmboard-S, a structural radiant heating product, is not comparable to Ecowarm, a nonstructural panel that is offered for different purpose and does not contain a subfloor.

72.    By operating a directly competing business, Defendants are aware that Warmboard-R product (rather than Warmboard-S) is comparable to Ecowarm and that (unlike Warmboard-S) Warmboard-R is used as an overlay panel to be installed on top of a subfloor and requires similar labor to install and involve comparable processes as Ecowarm.  By omitting this necessary information, Defendants' Warmboard-S Comparison Page misleads reasonable consumers to falsely believe that Warmboard does not offer a comparable product to Defendants' or one that is inferior to

Defendants' Ecowarm product.

73.    Defendants made these claims on the Warmboard-S Comparison Page for the purpose of making false or misleading comparisons between Warmboard's products and Defendants' Ecowarm products.

74.    For instance, Defendants made misleading claims that the Ecowarm product is lighter, easier to install, and less expensive than the Warmboard-S product.  These claims are misleading because they cause reasonable consumers to falsely believe that installing an Ecowarm product *and* a subfloor is more efficient and less expensive than installing a Warmboard-S product.  In reality, the installation of a structural subfloor is a portion of the normal project flow and labor cost of framing a home, and installing the Warmboard-S—a structural radiant heating product—creates greater efficiencies and labor savings than an overlay panel product like the Ecowarm product.

75.    The qualities and characteristics of a radiant heating product, especially in comparison to Defendants' product, are factors likely to influence a consumer's decision to purchase these products because they relate to inherent qualities and characteristics of a radiant heating product.

76.    The Warmboard-S Comparison Claims are therefore material to consumers' purchasing decisions.

**h.  Defendants' False or Misleading Independent Testing Claim**

77.    At all relevant times until around December 2022, Defendants falsely claimed on the Warmboard-R Comparison Page and the Thermalboard Comparison Page that "[i]ndependent testing by Virginia Tech of many system types shows Warmboard and Ecowarm RadiantBoard's extremely close in performance" (the "Independent Testing Claims").

78.    These claims are both false and misleading.  The cited Virginia Tech study actually was a thesis dated January 6, 2006 and submitted by a Masters candidate. *See* Khanna, Amit, "Development and Demonstration of a Performance Test Protocol for Radiant Floor Heating Systems,"        (Jan.        6,        2006),        available        at https://vtechworks.lib.vt.edu/bitstream/handle/10919/30987/Performance_Test_Protocol_for_Radiant_Floor_Heating.pdf?sequence=1&isAllowed=y (last accessed Sept. 12, 2022).

79.    The thesis was not peer-reviewed, did not purport to test an Ecowarm Product, and

predated Ecowarm's release of its RadiantBoard product line.

80. Therefore, the Independent Testing Claim are false. Contrary to Defendants' misrepresentations in the "Independent Testing Claims," the cited study did not "show[] Warmboard and Ecowarm RadiantBoard's extremely close in performance[.]"

81. The Independent Testing Claims are also false on their face.

82. The Independent Testing Claims also are misleading because they cause reasonable consumers to falsely believe that Defendants can substantiate their claims that the performance of Thermalboard and/or Ecowarm products are comparable to Warmboard's products.

83. Whether the performance of a radiant heating product is equivalent to another product relates to an inherent quality or characteristic of Warmboard's products and is an important factor that is likely to influence a consumer's decision to purchase these products because they relate to inherent qualities and characteristics of a radiant heating product.

84. The Independent Testing Claims are therefore material to consumers' purchasing decisions.

### i. Defendants' False and Misleading Comparison Chart

85. In addition to the false or misleading claims referenced above, on the Warmboard Comparison Page Defendants also compiled the false or misleading OSB, Aluminum Source, Aluminum Design, and Installation Claims in a comparison chart ("Comparison Chart"), depicted below, to highlight the purported differences between the Defendants' Ecowarm product and



**Ecowarm Radiantboard vs. Warmboard R**
Product Comparison Chart

| | RADIANTBOARD | warmboard RADIANT SUBFLOOR |
|---|---|---|
| Substrata | ✓ 6 or 7 Ply High Quality USA Plywood | ✗ Less Desirable OSB |
| Sustainability Certified | ✓ The Only FSC Certified Radiant Board | ✗ No Sustainability Certifications, Less Stringent Canadian Government and Industry Guidelines |
| Glue Type | ✓ No VOC Water Based Adhesive After Curing | ✗ No VOC Adhesive After Curing |
| Aluminum | ✓ Made In USA With Recycled Content | ✗ Unspecified Source |
| Aluminum Thickness | ✓ Thermodynamically appropriate thickness perfectly suited to heat loss of modern houses. | ✗ Added cost due to thicker than thermodynamically required aluminum. |
| Cost | ✓ Typically Costs 30% - 40% Less | ✗ Very Costly |
| Performance | ✓ Excellent | ✓ Excellent |
| Undercut Pipe Groove | ✓ Yes, Pipe Retaining Undercut Groove | ✗ No |
| Installation | ✓ Easier Installation Over Sub Floor – Saving Time & Money | ✗ Harder To Cut And Fasten / Pipe Retaining Plates Recommended On Turns |

Warmboard's product to claim that Defendants' Ecowarm product is superior to Warmboard's product (the "Superiority Claim").

86.    Defendants sought to amplify the false or misleading claims in the Comparison Chart by including ✓ next to statements about Defendants' Ecowarm product and a ✗ next to statements made about Warmboard's product.

87.    By including a positive ✓ next to statements about Defendants' Ecowarm product and a negative ✗ next to statements about Warmboard's product, Defendants sought to make false or misleading claims that Defendants' product is superior to Warmboard's.

88.    As detailed above, each of the Claims in the Comparison are false or misleading to reasonable consumers.

89.    Because Defendants relied on false or misleading Claims to make its Superiority Claim, the Superiority Claim is false or misleading to consumers.

90.    The Superiority Claim is also objectively false and misleading on its face.

91.    The qualities and characteristics of a radiant panel product, especially in comparison to Defendants' product, are factors likely to influence a consumer's decision to purchase these products because they relate to inherent qualities and characteristics of a radiant panel product.

92.    The claims Defendant makes in its Comparison Chart and the Superiority Claim are therefore material to consumers' purchasing decisions.

**j.  Defendants' Willful Misconduct**

93.    Defendants have published the above-referenced false and misleading statements in its marketing materials despite notice and despite their knowledge of the falsity with intent to mislead the consumers.

94.    Since September 2022, Warmboard has sent cease and desist letters that identified and requested that Defendants take down the false or misleading claims. However, Defendants have unreasonably delayed addressing Warmboard's concerns or to otherwise agree to corrective actions to remedy the harm from the false or misleading claims.

95.    For instance, in a letter dated September 13, 2022 and addressed to Defendant Warm Brothers and its owners—Defendant Corbett, Mr. Morgan Muir, and Mr. David Knight—Warmboard

identified many of the claims complained of herein and requested that Warm Brothers remove all false or misleading statements about Warmboard and Warmboard products from Defendants' websites and marketing materials. A true and correct copy of the September 13, 2022 letter is attached hereto as **Exhibit 4**.

96.    By letter sent on September 16, 2022, Defendant Corbett responded on behalf of Defendant Warm Brothers, in which he indicated that he would review Defendant Warm Brothers' "published marketing materials" with the hopes of "making productive changes" regarding the references to Warmboard and Warmboard products.

97.    By letter dated November 11, 2022, Warmboard provided Defendant Corbett and Defendant Warm Brothers a non-exhaustive list specifying 22 of the false or misleading claims made by Defendants. The letter reiterated Warmboard's request that Defendants remove all false or misleading statements about Warmboard and Warmboard products. A true and correct copy of the letter sent on November 11, 2022 is attached hereto as **Exhibit 5**.

98.    By letter dated November 28, 2022, Defendant Corbett responded on behalf of Defendant Warm Brothers, represented that Warm Brothers "will be making various changes to our advertising in regard to your client's products[.]"

99.    Yet, Warm Brothers revised only 4 out of the 22 misrepresentations identified in Warmboard's November 11 letter, failing to address and continuing to make the rest of the false and misleading statements through February 2023 and refusing to make corrective statements. Because of the expansive scope, persistence and the duration of Warm Brothers' false and misleading statement, the much-delayed changes made by Warm Brothers failed to rectify the false or misleading claims at issue or to stop the continuing harm to Warmboard.

100.   For instance, in December 2022 Warm Brothers revised the Comparison Chart to depict the following:

///

///

///

**Ecowarm Radiantboard vs. Warmboard R**
Product Comparison Chart

| | ecowarm RADIANTBOARD | warmboard |
|---|---|---|
| Substrata | ✓ 6 or 7 Ply High Quality USA Plywood | ✗ Made with OSB. Many contractors prefer plywood for its strength and moisture resistance. |
| Glue Type | ✓ No VOC After Curing | ✓ No VOC After Curing |
| Aluminum | ✓ Made In USA With Recycled Content | ✗ Sourced in USA. 24% recycled content. |
| Aluminum Thickness | ✓ Thermodynamically appropriate thickness suited to heat loss of modern houses. | ✗ Thicker aluminum adds significant costs. |
| Cost | ✓ Significantly Less Costly | ✗ Very Costly |
| Performance | ✓ Excellent | ✓ Excellent |
| Undercut Pipe Groove | ✓ Yes, Pipe Retained in Undercut Groove | ✗ Straight Sided Groove. Warmboard Manual says "Nail Plates may be utilized as necessary". |
| Installation | ✓ Lighter. Easy to cut and nail board makes installation over subfloor fast – saving time and money. | ✗ Heavier with thicker aluminum. Harder to cut and screw metal. |

101.    Despite Defendant Corbett and Defendant Warm Brothers' assurances that they would make "productive changes" to the false and misleading claims made on its websites and marketing materials, they revised the Comparison Chart in December 2022 that continued to make the false or misleading claims regarding the OSB, Aluminum Design, and Installation.

102.    Defendants were aware of the false and misleading claims complained of herein, and they knowingly and willfully made false or misleading claims against Warmboard and its products on its websites and marketing materials despite requests that it refrain from doing so.

103.    In March 2023, after knowingly and willingly continuing to make the false and misleading claims for many months after receiving the cease & desist letter, Defendants removed the remaining false and misleading statements, but have persisted in their refusal to make the requested corrective statements or to adjust their marketing activities to correct the unlawful marketing campaign and statements made against Warmboard that have misled the consumers for many years. Therefore, consumers will continue to be misled by Defendants' false and misleading statements and their refusal to employ corrective measures.

COMPLAINT

104.    On information and belief, Defendant Warm Brothers' failure or refusal to rectify the false or misleading claims complained of herein was at the direction of, and with the active participation by, Defendant Corbett.

k.    **Defendants' Unlawful False and Misleading Claims Have Caused Warmboard to Suffer Irreparable Harm and Damages**

105.    Defendants' unfair business practices and false or misleading statements have irreparably harmed Warmboard's reputation, reduced Warmboard's competitive advantage and good will, and have caused and are causing Warmboard to suffer irreparable harm and damage.

106.    In addition, as a result of Defendants' misconduct as stated herein, Warmboard has suffered more than $7 million in damages, including lost profits, from 2019 to present.

107.    As a result of Defendants' misconduct as stated herein, Warmboard has also suffered irreparable injury including but not limited to loss of reputation and, unless Defendants are enjoined from such unfair competition, will continue to suffer irreparable injury, whereby Warmboard has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### FALSE ADVERTISING

### (Lanham Act, Section 43(a), 15 U.S.C. § 1125(a))

108.    Warmboard incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

109.    As alleged herein, the Installation Claims, Materials Claims, Warmboard-S Comparison Claims, Imitation Claims, Structural Claims, Independent Testing Comparison Chart, and Superiority Claims (collectively, the "Deceptive Claims") that Defendants have made are false or misleading.

110.    The Deceptive Claims are likely to cause consumer confusion, mistake or deception as to the relative quality, composition, and performance of Warmboard Products in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

111.    The Deceptive Claims are made in the context of commercial promotion and "misrepresents the nature, characteristics [and] qualities" of Warmboard's Warmboard-S and

Warmboard-R products in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

112. Not only are these statements *likely* to cause confusion and mistake among consumers, they *have* done so, and Warmboard will show as much at trial.

113. Defendants' false or misleading statements are material because they relate to the Products' inherent qualities and characteristics, and therefore are statements upon which customers or potential customers have relied and will continue to rely in purchasing the Products.

114. Defendants' actions have a substantial effect on interstate commerce.

115. Defendants' actions mislead and harm reasonable consumers because the Deceptive Claims are all material to consumers' purchasing decisions for radiant heating products and influence their decision to purchase radiant heating products they may not otherwise purchase.

116. Warmboard is harmed by the Deceptive Claims because they provide Defendants an untrue and unjust advantage over Warmboard's products, with Warmboard being Defendants' direct competitor. The Deceptive Claims have harmed—and continue to harm—Warmboard's reputation and sales across its entire product lines, and especially across its sales of Warmboard-R and Warmboard-S products.

117. Defendants' actions have caused and are causing irreparable injury to Warmboard and, unless restrained, will continue to cause further irreparable injury to Warmboard, with no adequate remedy at law.

118. Separate from and in addition to causing Warmboard irreparable injury, Defendants' actions have caused and are causing direct financial injury to Warmboard and, unless restrained, will continue to cause further financial injury to Warmboard, in an amount to be proven at trial.

119. Defendants' actions have enabled it to obtain profits to which it is not entitled to retain —in law, equity, or good conscience—and have unjustly enriched Defendants, all to Defendants' profit and Warmboard's detriment.

120. Defendants have knowledge or reason to know that the Deceptive Claims are false or misleading, and therefore engaged in this false or misleading conduct willfully, deliberately, and with the intention of causing confusion, mistake, or deception.

121. Pursuant to 15 U.S.C. § 1116(a), Warmboard is entitled to injunctive relief.

122.    Pursuant to 15 U.S.C. § 1117(a), Warmboard is entitled to recover: (1) Warmboard's actual damages; (2) Defendants' profits, the amount of which may be increased at the Court's discretion; (3) the costs of the action; (4) exemplary damages above the amount found as actual damages; and (5) because this is an exceptional case, its reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

### FALSE ADVERTISING

### (Cal. Bus. & Prof. Code § 17500 et seq.)

123.    Warmboard incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

124.    Cal. Bus. & Prof. Code § 17500 provides that it is unlawful to dispose of property or to perform services, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate before the public, through the use of untrue and misleading statements that were known, or should have been known with the exercise of reasonable care, to be untrue and misleading.

125.    Cal. Bus. & Prof. Code § 17508 provides in relevant part, "(a) it shall be unlawful for any person doing business in California and advertising to consumers in California to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) purport to be based on any fact."

126.    Through the acts and statements described above, Defendants have made false and misleading representations to consumers of radiant heating products, the radiant heating industry, including contractors and others who are involved with a customer's decision to purchase Warmboard products, and would-be buyers of Warmboard-R and Warmboard-S products.

127.    Defendants made the Deceptive Claims outlined above on its webpages and marketing materials for the purpose of inducing consumers to purchase their products instead of Warmboard's products in violation of Bus. & Prof. Code §§ 17500 and 17508.

128.    At all relevant times, through its employees, agents, and representatives, Defendants knew or should have known that their advertising and promotional activities in making the Deceptive

Claims on its webpages, as described above, were false and/or misleading.  Upon information and belief, Defendants acted willfully, deliberately, and in bad faith in connection with the events described herein.

129.    The Deceptive Claims are false and misleading statements that were made and disseminated  with the intent to sell Defendants' products and to induce the radiant heating industry and/or the general public to purchase Defendants' product instead of Warmboard's products.

130.    Defendants' acts have caused and continue to cause financial damage and injury to Warmboard including lost sales, goodwill and reputation associated with Warmboard's Warmboard-R and Warmboard-S products in general.  Therefore, Warmboard has suffered, and will continue to suffer, irreparable harm unless this Court enjoins Defendants' unlawful behavior.  The balance of equities and public interest both favor enjoining Defendants' wrongful conduct.  Accordingly, Warmboard is entitled to permanent injunctive relief as set forth below.

131.    Warmboard is additionally entitled to an order of full restitution and damages for the wrongful acts alleged herein, including, but not limited, to the costs of any corrective advertising and website activities required to correct the false impression created by Defendants' false advertising, and an injunction requiring such corrective advertising.

## THIRD CLAIM FOR RELIEF

### UNFAIR COMPETITION

### (Cal. Bus. & Prof. Code § 17200)

132.    Warmboard incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

133.    Through the acts and statements described above, Defendants have violated Cal. Bus. & Prof. Code § 17200. Specifically, Defendants violated this article of the Code by engaging in unlawful business acts and practices, including using false and misleading statements in commercial online advertising to the radiant heating industry and consumers, and/or the general public of California concerning the installation of, materials used in, and performance of Warmboard-R and Warmboard-S products, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), as described above.

134.    By the acts and statements described above, Defendants have also violated Cal. Bus. & Prof. Code § 17200 by engaging in unfair, deceptive, untrue, and misleading advertising. Specifically, Defendants have made false and misleading statements in commercial advertising to the radiant heating industry and consumers, and/or the general public of California concerning the installation of, materials used in, and performance of Warmboard-R and Warmboard-S products. Defendants have resorted to unfair competition against Warmboard through its false advertising campaign on its website in an effort to inflict harm on Warmboard.

135.    Defendants have further violated Cal. Bus. & Prof. Code § 17200 by engaging in acts prohibited by Cal. Bus. & Prof. Code § 17500, as further described in paragraphs 108-122.

136.    At all relevant times, through its employees, agents, and representatives, Defendants knew or should have known that their advertising and promotional activities, as described above, were false and/or misleading.  Upon information and belief, Defendants acted willfully, deliberately, and in bad faith in connection with the events described herein.

137.    Defendants' acts have caused and continue to cause financial damage and injury to Warmboard including lost sales, goodwill and reputation associated with Warmboard's Warmboard-R and Warmboard-S products in general.  Therefore, Warmboard has suffered, and will continue to suffer, irreparable harm unless this Court enjoins Defendants' unlawful behavior.  The balance of equities and public interest both favor enjoining Defendants' wrongful conduct.   Accordingly, Warmboard is entitled to permanent injunctive relief as set forth below.

138.    Warmboard is additionally entitled to an order of full restitution for the wrongful acts alleged herein, including but not limited to the costs of any corrective advertising required to correct the false impression created by Defendants' false advertising, and an injunction requiring such corrective advertising.

**FOURTH CLAIM FOR RELIEF**

**TRADE LIBEL**

139.    Warmboard incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

140.    As alleged herein, the Installation Claims, Materials Claims, Imitation Claims,

Structural Claims, Independent Testing Claims, and Comparison Chart (collectively, the "Trade Libel Claims") that Defendants have made are false.

141.    The Trade Libel Claims were made in the context of commercial promotion and "misrepresents the nature, characteristics [and] qualities" of Warmboard's Warmboard-S and Warmboard-R products.

142.    The Trade Libel Claims were published on Defendants' websites and marketing materials for review and consumption by consumers of radiant heating products, the radiant heating industry, including contractors and others who are involved with a customer's decision to purchase Warmboard products, and would-be buyers of Warmboard-R and Warmboard-S products.

143.    Defendants knew that these statements were untrue/acted with reckless disregard of the truth or falsity of the statements. Defendants knew or should have recognized that consumers and third parties might act in reliance on the statements, causing financial loss to Warmboard;

144.    Defendants' acts have caused and continue to cause financial damage and injury to Warmboard including lost sales, goodwill and reputation associated with Warmboard's Warmboard-R and Warmboard-S products in general.

145.    Defendants have knowledge or reason to know that the Trade Libel Claims are false, and therefore engaged in this conduct willfully, deliberately, and with malice.

146.    Warmboard is entitled to an order of damages for the wrongful acts alleged herein, including, but not limited to, Warmboard's lost profits and the costs of any corrective advertising required to correct the false impression created by Defendants' conduct.

## FIFTH CLAIM FOR RELIEF

### COMMERCIAL DEFAMATION

147.    Warmboard incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

148.    As alleged herein, the Imitation Claims that Defendants have made are false.

149.    The Imitation Claims also were made in the context of commercial promotion and concern Warmboard's reputation.

150.    The Trade Libel Claims were published on Defendants' websites and marketing

materials for review and consumption by consumers of radiant heating products, the radiant heating industry, including contractors and others who are involved with a customer's decision to purchase product from Warmboard, and would-be buyers of products from Warmboard.

151.    Defendants' acts have caused and continue to cause injury to Warmboard as lost business, and have lessened, and are likely to continue to lessen, the goodwill and reputation associated with Warmboard.

152.    Defendants have knowledge or reason to know that the Imitation Claims are false, and therefore engaged in this false conduct willfully, deliberately, and with malice.

153.    Warmboard is entitled to an order of damages for the wrongful acts alleged herein, including, but not limited to, Warmboard's lost profits and the costs of any corrective advertising required to correct the false impression created by Defendants' conduct.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

154.    Warmboard incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

155.    Because of Defendants' wrongful conduct in making the Deceptive Claims on its webpages, Defendants have received a benefit of increased sales in an amount to be proven at trial.

156.    Defendants' continued retention of these amount is unjust and the Court sitting in equity should require Defendants to pay to Warmboard restitution that it has unlawfully received due to its unlawful Deceptive Claims.

## PRAYER FOR RELIEF

WHEREFORE, Warmboard respectfully prays that judgment be entered in its favor against Defendants, as follows:

a.    The Court enter judgment against Defendants that Defendants  have engaged in false advertising in violation of Section 43(a)(1)(A) and (B) of the Lanham Act, 15 U.S.C. § 1125(a)(1); false advertising in violation of Cal. Bus. & Prof. Code §§ 17500 et seq.; and unfair competition in violation of in violation of Cal. Bus. & Prof. Code §§ 17200 et seq.; trade libel; commercial defamation; and that

Defendant has also been unjustly enriched by its deceptive and wrongful conduct.

b.   The Court enter judgment against Defendants that Defendants' conduct was willful;

c.   The Court enter judgment finding that this is an exceptional case;

d.   The Court issue permanent injunctions ordering Defendants and each of its agents, officers, representatives, employees, successors, assigns, attorneys, and all others acting for, by or under authority from Defendants, or in concert or in participation with Defendants, and each of them to, inter alia, cease and remove all Deceptive Claims from their websites and all other advertising that is deemed to be false and misleading;

e.   The Court order that Defendants engage in corrective advertising, satisfactory to Warmboard, to ameliorate the false and misleading information that Defendant has promulgated;

f.   The Court grant an award to Warmboard of full restitution;

g.   The Court grant an award to Warmboard of monetary damages for Warmboard's lost business and profits, harm to Warmboard's goodwill and reputation, and Defendants' ill-gotten and unjustly derived profits and benefit;

h.   The Court grant an award of treble damages;

i.   The Court grant the costs of this action and the reasonable attorneys' fees and other expenses of litigation Warmboard incurs in connection with this action;

j.   The Court grant Warmboard pre- and post-judgment interest and costs; and

k.   The Court grant such other, different, and additional relief as the Court deems just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Warmboard demands a trial by jury on all issues so triable.

Dated:  March 23, 2023                          By:  _____

Yuri Mikulka (SBN 185926)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:     213-576-1000
Facsimile:      213-576-1100
yuri.mikulka@alston.com

*Attorneys for Plaintiff*
*Warmboard Inc.*

COMPLAINT